and we are ready when you are to go forward with I don't know if it's Palacios or Palacios. Thank you. Good morning may it please the court Caroline Olson on behalf of Karina Palacios who represents the estate of Bernardo Palacios. I'm here with my co-counsel Dick Baldwin, trial counsel Nathan Morris. Also here today is the plaintiff and Bernardo's sister Karina, his brother below because the district court committed multiple legal errors in its application of the summary judgment standard when it determined that the defendants were entitled to qualified immunity for their decision to fire 34 rounds at Bernardo ultimately killing him. I plan to talk about two things the applicable standard and the disputed historical facts. I want to start with the standard here because the court's principal error arose from its misapplication of the summary judgment standard and that error infected all aspects of the district court's decision. This court's case law is clear that the reasonableness of an officer's use of force is a jury question if there are disputed questions of material disputes of historical fact. That's true with respect to what actually happened and is also true as to the reasonableness of the officer's stated belief as to what happened whether mistaken or not. The Let me interrupt you for a minute. What the officer actually believed really isn't relevant it's what any what a reasonable officer in this circumstance would believe isn't it? That's correct whether a reasonable officer or what it's the reasonable officer standard are the job of the jury to determine whether that whether the officer state the officer could have missed have could have or in fact did perceive something and then whether that was mistaken or not that is a jury question. Here the district court asserts that role by resolving factual disputes based on video evidence that is far from clear and I think the best evidence of that is under the umbrella factual determination of whether or not Bernardo was effectively subdued after he had been shot multiple times and fell to the ground. Well you argue it in two separate pieces so maybe it'd be helpful to do that the first shot and then the last shot. Your Honor I do intend to talk a little talk about the initial use of force but I do want to just start and ground the discussion in the in what I think is the easiest basis for reversal which is the what happened after he was shot several times and I think this court's decisions in this in a state of smart in Revis and other decisions make clear that you you actually can disaggregate the analysis there's a separate question whether the initial use of force was appropriate or whether there's a change in circumstances because the suspect has been effectively subdued and you can analyze those questions separately if a jury could determine that a reasonable officer could have received the change in circumstances. Our contention is that there is here we know that at least because it appears that officer Sergeant Schneider was able to perceive that difference and I just want to get into the factual predicates underlying this umbrella question of whether Bernardo was effectively subdued once he fell into the ground we know that the video itself is unclear but the district and in order to reach the determination that Bernardo was not subdued the court concluded that there was only one reasonable inference that Bernardo pointed the gun at the officers. The video does not absolutely does not show that and in fact the court really relied on two principal videos neither of which resolves the question but does demonstrate the improper inferences the district court drew. The first video the officer of the district court relied on was the evidence from officer Southworth who was not on the scene he the video shows that he approaches after the shooting is over and sees Bernardo's body on the ground and the location of the gun and based on that video evidence which does not show the perspective of an officer on the scene the court concluded well there's no other conclusion to draw here other than that Bernardo pointed the gun at the officers while he was already on the ground. There are disputed questions of but there are disputed questions in fact as to whether he could not could have done that. The city's theory is that he raised his right arm and pointed the gun in fact he fell on his right side the amount of time which they point to for which he could actually appointed the gun was less than three-tenths of a second we're talking about someone who had already been shot multiple times had fallen to the ground had shown no an impetus at all to engage with the officers and so there are disputed facts under that umbrella question of whether or not Bernardo was effectively subdued in opposite inference which is that he pointed the gun the district court only drew reasonable and unreasonable inferences adverse to us. Well let me ask you this, you know you also have to show that it's clearly established and none of the cases that you've cited and smart the the suspect was not armed during the last shots the gun was out of his reach and clearly visible away from his hand and there was a witness who said there was enough time for smart to turn around look at the officer shake his head and then the officer shot three more bullets that based on ballistics test they could tell were fired through the back into the asphalt. That's not this case. I agree that a smart search smart is factually distinguishable but it is analogous in a purposes of the of this question which is the effect of what is a whether a person is effectively subdued I think it is because as this court said in a state of smart the relevant question is was the person effective the factual question is was the person effectively subdued that is the notice it was clear as of that time that an officer cannot deploy lethal force against someone who is effectively subdued. Don't we take into account what he had been doing immediately before the officers arrived he was not saying please give me your your money or please give me your wallet he had a gun holding it on these other people. You remember we do need to take into account the totality of the circumstances he was and but there were flip there the flip side of that he was running he had a gun he also demonstrated that he had he had not demonstrated any intent to engage with the officers it's clear from the video that he shoots out officers I don't want to die and well he proved he can use a flea moment if you want it it certainly was a possibility I would also take the court back if we're looking at the totality of circumstances and what preceded the initial use of force it's also important to remember that Bernard did not actually match the exact description which was the only description that the police officers had at the time the report had been that there was a Hispanic male with light skin wearing all dark clothes that was that did not match Bernardo's attire on the day of he was wearing light jeans on a sweatshirt with a light colored gray body and black arms and so we have a suspect who did admittedly run but had multiple opportunities to engage with the officers did so did not do so and the other fact going to that this that the district court didn't really engage with but does again go to the reasonableness of the initial use of force I would point to two things the first is Bernard is obvious and manifest intoxication which calls into question whether he was able to engage with the officers I have a problem with this yes he looks like he's quite intoxicated but how does that predict that he's not going to be violent in fact if you've sat on the bench long enough you know it's just the opposite absolutely your honor and certainly intoxication can make someone this court's case loss recognizes that intoxication can make someone unpredictable but here what the intoxication was causing him to do and what was manifest to the officers was that he was repeatedly stumbling as officer Schneider testified in his deposition he saw him stumbling around it is clear that Bernardo can barely stand he's struggling to stand up he's struggling to even get on his feet it is unclear in that and you can even see this I think in both from the the body cam of officers Iverson and Fortuna there are several seconds where he's literally struggling on the ground multiple seconds I counted three maybe even more where he's just on the ground trying to get off the officers are both stationary they had they're not really do they had an op they had at a minimum an opportunity to warn him if you do not drop your weapon we will use lethal force no such warning was given here despite manifest opportunity for them at least to give that warning and as this court said in city of Lakewood in some cases the failure to provide and a warning when it is feasible to do so can be dispositive of the case and certainly here when you have someone who's facing away from you running never pointing the gun at you which is undisputed at least as to the initial use of force and the officers had at least three seconds probably more in which they could you off they could warn Bernardo about that I'm sorry how much time three seconds I'm just referring when I say three seconds I'm referring precisely there to the second time that Bernardo fell and then got back up off of the ground remember I would say that it I counted at least 12 seconds from between the first fall which is when he's immediately crossing 900 south until an over 10 seconds before the first fires first shots are fired in considering whether to use lethal force could the officers consider not only danger to themselves but also danger to third parties absolutely your honor now I think the testimony there from the officers that they actually didn't see anybody around in the immediate vicinity when they initially opened fire but I would say the constitutional question is a little bit different after that Bernardo fell on the ground because then there's he's effectively subdued the threat not only to the officers but to any passers-by would also have would also have passed are you talking about the final shots that's correct everything after the initial shot yes as to that they are absolutely welcome turning to run they've repeatedly told him to drop the gun every time he stumbles he picks it up again and they they have reason to believe he's just committed two armed robberies is it a factor for a reasonable officer to consider the possibility that he might use the gun on a third party if he escapes is it a factor yes is it dispositive is not and looking at it in the context of this particular circumstance we know that the officers testified that there was no that there were no pedestrians nearby that they saw that they actually saw and as going back to what I mentioned before we also had at least a reasonable an officer in their position would have had some doubt as to whether he was in fact the individual who committed the robberies given the mismatch and mismatch in identification I want to talk a little bit more about the the continued use of for the continued use of force our view of the facts is that Bernardo fell to the ground facing away from the officers and then struggled to get back fell on the ground and then was struggling to turn around at that point he didn't move his hands over the abdomen but our contention is that he did so either in a defensive posture or simply because he had been wounded on the abdomen and was attempting to grant to to hold on to protect himself nothing in the video blatantly contradicts that in fact the the key evidence that the test the test isn't whether a reasonable jury could could conclude that he was holding his stomach because he was injured the test is whether a reasonable officer in the spur of the moment could have thought that he was a danger to the officer or others because he still held the gun and it was pointed in the general direction of the officers to your honor to be clear we think that there are a couple of issues there about why even an officer could not be mistaken and reasonably perceiving a continued threat one it wasn't clear that it's not certainly not clear from the video that he was pointing it in their direction but there are a number of other factors from the video he still has the gun after he's been told multiple times to drop he has also been shot a number of times has fallen to the ground the city's theory is that he somehow in less than three-tenths of a second raised his right arm and pointed it at the officers notwithstanding the fact that he had fallen on his right arm his right arm and is very manifestly incapacitated and unable and struggling to move in that situation and a reasonable a jury could determine that it would be unreasonable for an officer not to perceive that the situation at chain had changed and they could stop the use of force unless the court is any further questions I like to reserve the rest of my time for rebuttal thank you thank you your honors some thank you your honors Samantha slop on behalf of the appellees you want to pull that microphone over a little bit is that better yes plaintiff's argument suffers from two errors first they identify an incorrect standard for when they believe that the reasonable determination and with respect to the officers belief goes to the jury second the historical facts that they claim are in dispute don't change the result of the reasonable determination first at the heart of this and in their briefing they really only identify three historical facts that they contend are in dispute they contend mr. Palacios was intoxicated they claim that he lay on his side for three seconds after he fell to the ground after being shot before rolling onto his back and they contend that there's a dispute with respect to whether he was holding the gun or pointing it at the officers when he did roll onto his back but simply claiming that there is a dispute about a fact does not show the district court ed in making the reasonable determination or making reasonableness determinations rather plaintiffs must show that the fact that they claim is in dispute is material which means it would change the result of the courts reasonableness determination I mean let me point you to the first shots that the officers fired at that time if you look at the video it appears that mr. Palacios is turning to run again has picked up the gun and his back is to the officers how would a reasonable officer fire there or continue to pursue and keep him in sight is that what is the law about when they could fire in those instances and the law is if the facts show that it was objectively reasonable for the officers to believe based on the totality of the circumstances viewed from the perspective of the officer to believe that he posed an imminent threat and I think it's helpful and to list the point it's and all of these facts are not in dispute the officers were responding to reports of two violent felonies with a gun these calls were priority one calls that's the highest level that a call can be rated dispatch was told when officer Iverson was walking onto the property but the one of the victims rooms officers then saw mr. Palacios outside of the second victim room he fled when the officers tried to make contact and drew his weapon he then ignored 11 commands from three different officers to drop his gun and he did exactly the opposite he took affirmative actions to keep that possession well and I think his counsel would argue that the other thing he did is through all of that chase through alleys and corners he never once point actually turned and pointed the gun at the pursuing officers is that part of the totality of the circumstances it is part of the totality of the circumstances but it's certainly not material this court has addressed that kind of question on numerous occasions and this court knows that an officer does not need to see the glint of steel and to be able to reasonably and find that a suspect is presenting an imminent threat here we have much more than a glint of steel the officers knew mr. Palacios was in possession of a gun they just used that gun to threaten two other individuals he was now fleeing from police officers he'd removed the gun from his pants as he was running he ignored 11 commands to leave that gun he took affirmative actions to keep it in his possession and this court does not require that the officers wait until the this court has repeatedly said and so has the US Supreme Court the such action could be suicidal therefore we don't wait until a suspect is pointing the gun rather we look at whether based on the totality of the circumstances from the perspective of the officer if it was reasonable to for the officer to believe that there was an imminent threat and Mr. Palacios had dropped the gun on the third fall and still kept running could they use a lethal force then and he left the gun behind on the ground of course not so it's the fact that he kept possession of the gun yes that is an incredibly important factor in this in and I was just listing the three facts that the plaintiffs in their briefing royally say are in dispute and they say but the problem with that I get their identification of these three facts is that sleep simply claiming that there is a dispute as about a fact does not show that the district court ed in making the facts have to be material in fact that such that they would change the court's conclusion with regard to reasonableness and none of these three facts meet that threshold with respect to the first claimed dispute intoxication whether Mr. Palacios was intoxicated does not alter the reasonable for the officers to believe that he presents an imminent threat despite his intoxication he's just committed to other violent felonies with this gun he's now fleeing from officers he's ignoring multiple commands to drop that gun he's taking affirmative action to keep it within his possession and as this court noted in a question to the appellants this court in fact in a very recent decision of Coronado addressed a very similar argument and rejected it finding that an intoxication in that case of course didn't reduce the imminence of threat because it noted that if anything intoxication only added to the unpredictability and demonstrated that the suspects propensity for much of the appellants briefing focuses on a claimed dispute with respect to whether and Mr. Palacios was holding a gun or pointing it in the officers directions once he was on the ground and had rolled onto his back but the relevant question is not whether or not he was holding that gun whether or not he was pointing it at the officers the relevant question is viewed in the totality of the circumstances was it reasonable for the officers to believe that that is what he was doing well I guess it'd be relevant if he had dropped the gun and didn't have possession of it anymore right it of course it of course would be relevant if he had dropped the gun at any point when he was told 11 times to do so or as in your hypothetical that you just gave me a few minutes ago if he hadn't picked it up that third time because it then wouldn't be in his possession but those aren't the totality of the circumstances here he deliberately retrieved that gun that third time carried on went to the ground and then when he was on the ground he didn't get why he wasn't immobile even the plaintiffs admit that he wasn't they admit that he rolls onto his back they admit that he's doing something with his hands and they say they say it's not even clear what he's doing with his hands and this court knows and has issued multiple decisions the estate of Dylan Taylor being a recent one that if officers are in a position and there's a totality of the circumstances viewed from their perspective that makes it reasonable for them to believe that the suspect has a weapon is drawing a weapon and he's getting ready to use it even if there isn't a weapon it's objectively reasonable for the officers to come to that belief and this is a case that is far easier for the court to find that it was objectively reasonable because of all of these circumstances and mr. Palacios was still in possession of that weapon he was on the ground he was doing something he wasn't immobile and the was going to roll over and fire at them but what do we do with the testimony or the declaration of William harming the expert that the plaintiffs offered this court could do exactly as the district court did and there's really three relevant points here first experts can't apply until legal conclusions and where this court is making a reasonable determination that is based on undisputed facts or a mixture of undisputed facts and taking facts in the light most favorable to the plaintiff they can make that reasonable determination so mr. harmonies testimony with respect to what the officers could and couldn't reasonably believe is actually a legal conclusion but we don't need to make that the only reason with respect to mr. harmonics testimony the district court noticed or noted much of his testimony is actually blatantly contradicted by the video but again that's not what the district court rested its decision with respect to the harmony testimony and I think this is make this clear in their briefing but if you look at the district court's decision what he actually did was he said I think a lot of these facts are blatantly contradicted by the video but even if I credit mr. Harmonic speculation and his testimony that is blatantly contradicted I'm still come to the same conclusion that the officers belief based on the totality of the circumstances was objectively reasonable listing all of those factors which I've repeated many times here this morning I'd like to turn just very briefly to the clearly established prong as this court has noted this morning an argument in addition to identifying a constitutional violation plaintiff bears the burden of identifying case law or a case from the Tenth Circuit or the US Supreme Court with sufficiently and similar facts that it would put every reasonable officer on notice that the specific conduct in this case violated constitutional rights and the cases that plaintiff relies on are not at all actually similar and notably several are not even from this circuit unless the court has any additional questions thank you I will conclude thank you three quick points your honors the first is that I that the Pele has mischaracterized to the extent of the dispute of facts and their materialist to the outcome of the case smartest made clear that it is not lawful for an officer to use force against someone who is effectively subdued the factual question here which is for the jury is whether whether Bernardo was subdued or whether an officer could even have been reasonable and mistakenly believe that he was not subdued here there's that that turns on the question of whether or not he was because that he was pointing the gun at them or was otherwise taking a hostile gesture with a gun like to remind the court that the mere possession of a gun is never sufficient by itself to use to use authorized lethal force this we cite to a number of cases on that in our brief most notably city of Lakewood which was decided in August of 2021 we also cite the Cole decision on that as well it is not enough to have mere possession but but also you must take a hostile gesture with it that then gets to this your honor second question the second point I want to get to which was that the even the initial use of force was unreasonable as your honor pointed out judge McHugh Palacio Bernardo was facing away there were multiple seconds that had elapsed when the officers were just watching him there was no warning that they were about to use they were about to use lethal force it is absolutely true that he was carrying a gun but he had taken no effort to make it to make no hostile gesture and I would also point out that this court in almost all the cases at the appellee site as where the use of lethal force was authorized the the suspect was making verbal threats to use force against the police officer and that was true whether they were armed or not that is not the case here what we have is Bernardo telling the officers audibly I don't want to die and every signal that he did not want to engage the final point I want to address is the Harmaning affidavit this court said in Kavanaugh that a police practices expert can testify that under the circumstances a reasonable officer would have concluded that a person was not a threat that that's directly from Kavanaugh do you look at the the joint appendix volume 3 page 77 that's exactly what Harmaning said and then he backs it up with what the facts as to why an officer would have perceived that there was no threat including that Bernardo was injured the movement of his hands the fact that he had fallen on the ground and a jury could jury could admittedly see differences but here that is sufficient to create a ministerial dispute of fact thank you thank you runners we'll take this matter under advisement appreciate your argument